**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-59 (JMC)** |
| **v.** | : | |
| | : | |
| **ROBERT COLELLO,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Robert Colello has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the United States requests that this Court sentence Robert Colello to a term of imprisonment of 21 days, to be followed by 36 months' probation, on Counts Three and Four. The government also requests that this Court impose, consistent with the plea agreement in this case, $500 in restitution.

I.      **Introduction**

Defendant Robert Colello participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred police officers, and resulted in more than $2.9 million in

1

losses.[1]  In this case, the government's recommendation of 21 days of incarceration, followed by 36 months of probation, is supported by, among other factors, the defendant's entry into the Capitol building, his scaling a wall outside the Capitol building, and his helping seven other rioters climb the same wall.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings.  But for his actions alongside so many others, the riot likely would have failed.  Conversely, to Colello's credit, when he was first contacted by law enforcement investigating this case, he promptly agreed to sit for an interview, provided information, and agreed to accept responsibility and plead guilty.  Here, the facts and circumstances of Colello's crime support a sentence of a term of imprisonment of 21 days, to be followed by 36 months' probation.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

The government refers to the general summary of the attack on the U.S. Capitol.  *See* ECF No. 9 at ¶¶ 1–7.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05.  That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.  The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim.  MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum.  However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Colello's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Robert Colello and another individual—Joshua Kaleb Youngerman, 23-cr-269—traveled to Washington D.C. from Southern California and attended the former President's "Stop the Steal" rally by the Ellipse.  *See* ECF No. 9 at ¶ 8.  In the below photograph from the "Stop the Steal" rally, Colello is indicated in yellow, wearing a red hat and black jacket over a red-hooded sweatshirt, and Youngerman is indicated in green, wearing a grey jacket and a red hat.



*Image 1: Photo of Colello and Youngerman at the "Stop the Steal" Rally*

Following the rally, Colello and Youngerman walked toward the U.S. Capitol building, where they passed fencing and barricades establishing the restricted perimeter and joined with thousands of other rioters on the grounds of the U.S. Capitol.  *See* ECF No. 9 at ¶ 9.  A review of the U.S Capitol's CCTV footage reveals that, at approximately 2:14 p.m., Colello and Youngerman walked on the northwest lawn, past a row of metal barricades, toward the U.S. Capitol building.  *See* Exhibit 1.  The below is a still image from the U.S. Capitol's CCTV footage,

in which Colello is indicated in yellow and Youngerman is indicated in green, as the pair walked toward the northwest stairs.



*Image 2: Screenshot of Exhibit 1 at Approximately 2:14:02 p.m.*

As they continued toward the building, Youngerman turned to Colello, gestured to the northwest stairs leading to the Upper West Terrace, and said, "Let's climb it right there."  *See* Exhibit 2.  At approximately 2:27 p.m., Colello climbed a rope up the wall that leads onto a stairway on the northwest side of the U.S. Capitol building, leading to the Upper West Terrace. *See* Exhibits 3 & 4; ECF No. 9 at ¶ 10.  When he made it on to the stairs, Colello turned back to the assembled crowd and celebrated.  *See* Exhibits 3 & 4; ECF No. 9 at ¶ 10.  Images 3 through 5 below are still images from the U.S. Capitol's CCTV footage, showing Colello climbing a rope onto the northwest stairs.  Colello is indicated in yellow in each image.



*Image 3: Screenshot of Exhibit 3 at Approximately 2:27:34 p.m.*



*Image 4: Screenshot of Exhibit 3 at Approximately 2:27:36 p.m.*



*Image 5: Screenshot of Exhibit 4 at Approximately 2:27:46 p.m.*

At approximately, 2:29 p.m., Colello, who had briefly ascended the stairs, slid down the railing to the northwest stairs, and then proceeded to help other rioters scaling the walls onto the building.  *See* Exhibit 4; ECF No. 9 at ¶ 10.  The images below are still images from the U.S. Capitol's CCTV footage showing Colello (circled in yellow) helping other rioters scale the wall to the northwest stairs.



*Image 6: Screenshot of Exhibit 4 at Approximately 2:29:13 p.m.*



*Image 7: Screenshot of Exhibit 4 at Approximately 2:29:45 p.m.*



*Image 8: Screenshot of Exhibit 4 at Approximately 2:30:00 p.m.*



*Image 9: Screenshot of Exhibit 4 at Approximately 2:30:24 p.m.*

After helping three rioters climb the walls of the Capitol—as seen in Images 7, 8, and 9—Colello briefly paused, at approximately 2:31 p.m., to celebrate.  *See* Exhibit 5.  As seen in Image 10 below, Colello turned directly to a nearby camera and shouted "Woo!"  *Id.*



*Image 10: Screenshot of Exhibit 5 at Approximately 0:30*

About a minute later, Colello resumed helping other rioters scaling the walls onto the building, including Youngerman.  *See* Exhibit 3.  In total, after climbing the wall himself, Colello helped seven other rioters—including Youngerman—scale the wall of the U.S. Capitol building.  *See id.*  The images below, which are still images from the U.S. Capitol's CCTV footage, show Colello (circled in yellow) helping rioters climb the wall.  In Image 13, Youngerman is indicated in green.



*Image 11: Screenshot of Exhibit 3 at Approximately 2:32:19 p.m.*



*Image 12: Screenshot of Exhibit 3 at Approximately 2:32:48 p.m.*



*Image 13: Screenshot of Exhibit 3 at Approximately 2:33:14 p.m.*



*Image 14: Screenshot of Exhibit 3 at Approximately 2:33:40 p.m.*

At approximately 2:37 p.m., after moving up the northwest stairs to the Upper West Terrace, Colello entered the U.S. Capitol building through the Upper West Terrace Door.

Youngerman had entered the Capitol building seconds before Colello.  *See* Exhibit 6, ECF No. 9 at ¶ 11.[2]  As Colello entered the building, he helped another rioter open one of the two doors, so that other rioters could more easily breach the building.  Image 15, a still image from the U.S. Capitol's CCTV footage, shows Colello (circled in yellow) entering the U.S. Capitol building.



*Image 15: Screenshot of Exhibit 6 at Approximately 2:37:21 p.m.*

After entering through the Upper West Terrace Door, Colello and Youngerman proceeded to the Rotunda.  *See* Exhibit 7, ECF No. 9 at ¶ 12.  While in the Rotunda, Colello observed tear gas being deployed, at which point he turned to leave.  *See* Exhibit 7, ECF No. 9 at ¶ 12.  As he moved toward the exit, Colello grabbed Youngerman's attention, and Youngerman followed Colello back toward the Upper West Terrace Door.  Image 16 below is a still image from the U.S

---

[2] The Statement of Offense, ECF No. 9 at ¶ 11, incorrectly states the sequence of events on this minor point.  The Statement of Offense states, "At approximately 2:37 PM EST, the defendant entered the U.S. Capitol building through the Upper West Terrace Door, followed by [Youngerman]."  In fact, Colello was a few seconds behind Youngerman in entering the building itself.

Capitol's CCTV footage, showing Colello (circled in yellow) and Youngerman (circled in green) in the Rotunda.



*Image 16: Screenshot of Exhibit 7 at Approximately 2:38:15 p.m.*

As shown in Image 17 below, Colello exited the U.S. Capitol building at approximately 2:38 p.m. through the Upper West Terrace Door, followed a few seconds later by Youngerman. In the image, Colello is circled in yellow.



*Image 17: Screenshot of Exhibit 6 at Approximately 2:38:45 p.m.*

*Colello's Interview*

As soon as law enforcement began trying to contact Colello, he took a cooperative posture with the United States.  He retained counsel, who promptly communicated to the United States Colello's willingness to sit down with the United States for a proffer and to ultimately accept responsibility through a plea agreement.  He also provided agents with his cell phone and consented to its search.  Colello also provided relevant videos he had access to through another digital device.

In his proffer interview, Colello stated that Youngerman—who he knew from high school—had contacted Colello and offered Colello a free plane ticket to come to Washington, D.C. Payment for Colello's hotel and flight were organized by Youngerman.  Colello admitted that, on January 6, 2021, he and Youngerman went to the "Stop the Steal" rally, where they heard then-President Trump and others speak.  After the rally, Colello and Youngerman advanced to the Capitol and onto the west lawn.  Colello climbed up a rope onto the northwest stairs leading to the

14

Upper West Terrace and helped other rioters, including Youngerman, do the same.  Colello and

Youngerman entered the Capitol building and walked into the Rotunda.  While in the Rotunda,

Colello heard others yelling that there was tear gas, and he decided to leave, and Youngerman

followed him.  The pair exited through the same entrance they used to enter the building.  Colello

told the government he did not know what Congress was doing inside the Capitol.  He also claimed

that he observed police welcoming rioters into the building.

Text messages recovered between Colello and Youngerman confirm that Colello came to

Washington, D.C. at the encouragement of Youngerman, and that Colello's flight and hotel costs

were covered.  On December 24, 2020, Youngerman texted Colello, "[F]or DC, I need you bday,

email and phone number so that I can it over to who is donating for flights and get a flight booked

most likely by Saturday for u if you still want to go."  Exhibit 8.  Colello provided the information

and asked, "[C]an you give me all the details btw?"  *Id.*  Youngerman responded, "Ye for sure. So

it's essentially gonna be a big protest against the certification of the election.  The protest is going

to be on January 6th in front of congress.  This is gonna be the 3rd protest in DC but this one is

gonna be the biggest one cause Trump called for this protest.  They are always fun cause for the

most part everyone is happy even tho they are fighting a fraud election.  I'll send u a cool video

someone made of the last two."  *Id.*  The next day, Youngerman texted Colello, "Hey!  It's round

trip.  I just forwarded your conf to you.  I also should have sent u a conf for a train ticket round

trip from Baltimore to DC.  It's a 25 min train ride.  DC has 3 airports.  The one is Baltimore was

the closest.  Someone . . . sponsored you so he may send you a text just wishing you a safe trip.

Your all set!  Merry Christmas btw."  *Id.*  Colello responded, "Are you going?!?  What do you

recommend for hotels?"  *Id.*  Youngerman responded, "Yah I'm going.  I'm leaving out of San

Diego tho.  But I will be in DC before u get there so I'll just meet you at the train station.  If you

want I have a an extra bed in my room so u can stay with me.  Hotels are pretty pricey at this point." *Id.*  Colello responded, "Oh sweet dude yes I'll stay with you! And I'll get us diner and what not man!" *Id.*

*The Charges and Plea Agreement*

On January 31, 2024, the United States charged Colello by a four-count Information with violating 18 U.S.C. § 1752(a)(1) (Count One), 18 U.S.C. § 1752(a)(2) (Count Two), 40 U.S.C. § 5104(e)(2)(D) (Count Three), and 40 U.S.C. § 5104(e)(2)(G) (Count Four).  *See* ECF No. 1. Prior to being formally charged, Colello reached an agreement with the United States to a plea. On February 14, 2024, pursuant to that plea agreement, Colello pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. § 5104(e)(2)(D) (Count Three), and 40 U.S.C. § 5104(e)(2)(G) (Count Four).  *See* ECF No. 8.  By plea agreement, The defendant agreed to pay $500 in restitution to the Architect of the Capitol.  *See id.* at ¶ 11.

### III.  Statutory Penalties

Colello now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(D) (Count Three), and 40 U.S.C. § 5104(e)(2)(G) (Count Four).  As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000 per count. The defendant must also pay restitution under the terms of his plea agreement.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078–79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it.  18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.  Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.  In this case, as described below, the

Section 3553(a) factors weigh in favor a sentence of term of imprisonment of 21 days, to be followed by 36 months' probation.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).  The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters."  *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).  While assessing Colello's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors.  Notably, for a misdemeanor defendant like Colello, the absence of violent or destructive acts is not a mitigating factor.  Had Colello engaged in such conduct, he would have faced additional criminal charges.

While Youngerman was a member of the D.C. Brigade group—a Telegram group organized specifically as a "group of fighters" in anticipation of January 6, *see* Statement of Offense, *United States v. Russell Taylor*, 21-cr-392-2, ECF No. 197 at ¶ 18—Colello did not coordinate his January 6, 2021, conduct with extremist groups.  He came to D.C. at Youngerman's invitation, though Youngerman was clear in text messages that the purpose of their trip was related to Congress's certification of the Electoral College vote.  *See* Exhibit 8.

In D.C., at the Capitol, Colello engaged in aggravating behavior.  One of the most important factors in Colello's case is his scaling the wall leading to the northwest stairs and helping seven other rioters do the same.  Colello's breach of the Capitol building itself—which, contrary to his statement to the government, was not authorized by any law enforcement—was also a serious offense, especially since he helped open a second door allowing more rioters to enter the Capitol

17

building.  This conduct justifies a term of term of imprisonment in this case.  The government also recognizes, however, that Colello was in the Capitol only briefly—albeit because it appears that OC spray forced him out.

Accordingly, on balance, the nature and the circumstances of this offense establish the need for a term of imprisonment in this matter, followed by a term of probation.

### B.  Colello's History and Characteristics

Colello has no criminal convictions, arrests, or pending charges.  It is likewise to his credit that, after being approached by the FBI, Colello promptly expressed a willingness to accept responsibility and plead guilty based on his conduct—prior to any charges being filed—and he provided the United States with information through a proffer and provision of other evidence. The credit the defendant deserves for his willingness to promptly accept responsibility—albeit only after the FBI had sought him out—is blunted by multiple statements that reflected a lack of true remorse, most troublingly the untrue statement that police had welcome Colello into the building on January 6.

More recently—and, notably, before being approached by the United States in this investigation—Colello participated in and graduated from a Teen Challenge Ministry Institute, a ministry program.  Through this program, which Colello continues to be involved in, he works with high-school aged, troubled youth.

### C.  The Need for the Sentence Imposed To Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law.  As with the nature and circumstances of the offense, this factor supports a term of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a

political protest, simply an episode of trespassing in a federal building.  What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D.  The Need for the Sentence To Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." Statement of Judge Nichols at Sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37.

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Colello's lack of criminal history, successful substance abuse treatment, and cooperation with the government in this investigation suggest that, while specific deterrence is always a factor that must be considered, the need for specific deterrence in this case is less serious than in others. However, Colello's statements to the FBI did minimize his conduct in certain ways suggesting that

he may not fully appreciate the wrongfulness of his conduct and that, therefore, some specific deterrence is required.  Accordingly, the United States submits that a term of imprisonment is appropriate in this case.  Conversely, a sentence of mere probation, even with a term of home detention, risks sending the wrong message to the defendant.  The Court must convey a message to the defendant that criminal actions have consequences.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3]  This Court must sentence Colello based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Colello has pleaded guilty to Count Three (40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol)) and Count Four (40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building)) of the Information.  These offenses are Class B misdemeanors.  18 U.S.C. § 3559.  Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9.   The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following two cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Joshua Dressel*, 21-cr-572, the court imposed a term of imprisonment of 14 days for a single Section 5104(e)(2)(G) offense, for defendant Joshua Dressel, who scaled metal bike racks to ascend onto the northwest stairs and, like Colello, assisted other rioters in climbing onto the northwest stairs. *See United States v. Dressel*, 21-cr-572, ECF Nos. 32 & 38.

In *United States v. Brent John Holdridge*, 21-cr-729, the court imposed 60 days' incarceration, followed by 3 years of probation, for a single Section 5104(e)(2)(G) offense. *See United States v. Dressel*, 21-cr-729, ECF No. 69. Like Colello, defendant Brent Holdridge walked along the stone bannister on the northwest stairs, though, unlike Colello, he did not aid any other rioters in climbing the wall. *See United States v. Dressel*, 21-cr-729, ECF No. 59.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v.*

*Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).  "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant."  *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes."  *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4]  Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b).  At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement."  *See* 18 U.S.C. § 3663(a)(3).  *United States v. Anderson*, 545 F.3d 1072, 1078–79 (D.C. Cir. 2008).

Those principles have straightforward application here.  The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Colello must pay $500 in restitution, which reflects in part the role Colello played in the riot on January 6.[5]  ECF No. 8 at ¶ 11.  As the plea agreement reflects,

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property . . . including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss."  18 U.S.C.  § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can

the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Colello's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.    Fine

The defendant's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four) subject him to a statutory maximum fine of $5,000 on each count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *see also* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. *See* PSR ¶ 65.

## VII.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Colello to a term of imprisonment of 21 days, to be followed by 36 months' probation, on Counts Three and Four. Such a sentence reflects the seriousness of the offense, promotes respect for the law, and deters future crime by

---

be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

imposing restrictions on Colello's liberty as a consequence of his behavior, while recognizing his

acceptance of responsibility for his crime.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Anthony W. Mariano*
ANTHONY W. MARIANO
MA Bar No. 688559
Trial Attorney, Detailee
Capitol Siege Section
United States Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, D.C. 20530
(202) 476-0319
Anthony.Mariano2@usdoj.gov

</div>